**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Amin Abdur Rahman Shakur, | ) | |
| Plaintiff, | ) | |
| | ) | No. CIV 14-2318-TUC-CKJ |
| vs. | ) | |
| | ) | **ORDER** |
| Charles L. Ryan, | ) | |
| Defendants. | ) | |

Pending before the Court are the screening of Plaintiff's Amended Complaint (Doc. 13), Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 15), Plaintiff's Motion for an Emergency Preliminary Injunction and Temporary Restraining Order (Doc. 24), and Plaintiff's Motion for the Appointment of Counsel (Doc. 19). The Court will accept and screen Plaintiff's Amended Complaint. The Court will deny Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Plaintiff's Motion for an Emergency Preliminary Injunction and Temporary Restraining Order, and Plaintiff's Motion for the Appointment of Counsel. Additionally, the Court has reviewed Plaintiff's Motion for Ruling (Doc. 20), Plaintiff's June 25, 2015 correspondence (Doc. 22), Defendant Corizon, LLC's Response to Plaintiff Requesting Temporary Restraining Order and Preliminary Injunction (Doc. 21), Plaintiff Shakur's Response to Corizon's Objection to Plaintiff's Motion for TRO/Preliminary Injunction (Doc. 23), Defendant Corizon, LLC's Response to Plaintiff's Second Motion Requesting Temporary Restraining Order and Preliminary Injunction (Doc. 25), and Plaintiff's Answer to Corizon (Defendant) Objection to Plaintiff's Motion for an Emergency Preliminary Injunction (26).

I.    *Amended Complaint* (Doc. 13)

       Plaintiff Amin Abdur Rahman Shakur ("Shakur") has filed an Amended Complaint. The Court will accept Shakur's Amended Complaint. The applicable rule states:

> 1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed.R.Civ.P. 15(a)(1).

       The Amended Complaint will proceed pursuant to Fed. R. Civ. P. 15(a)(1)(A) and 15(a)(1)(B) as Plaintiff has filed the Amended Complaint 21 days after serving the original Complaint and 21 days after service of a responsive pleading.


II.    *Statutory Screening*

       As stated in its November 25, 2014 Order (Doc. 6), the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, an officer, or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)(2).

       A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  *Id* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

- 2 -

1    But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
2    must "continue to construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th
3    Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards
4    than formal pleadings drafted by lawyers.'" *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89,
5    94 (2007) (per curiam)). If the Court determines that a pleading could be cured by the
6    allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint
7    before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000)
8    (en banc).

9

10   III.    *Screening of Amended Complaint*

11   Shakur's Amended Complaint asserts two counts of constitutionally deficient medical
12   care and names Corizon Health Care, Inc. ("Corizon"), who is a contracted health care
13   provider at the Arizona Department of Correction ("ADOC"); Lucy Burciaga ("Burciaga"),
14   the Medical Director at the Arizona State Prison - Tucson; Mathew Harvey ("Harvey"), the
15   "Facility Healthcare Admin;" and Charles L. Ryan ("Ryan"), the Director of Prisons at the
16   ADOC, as Defendants.

17   In Count One, Shakur alleges that he suffers chronic headaches that have been
18   diagnosed as migraines, migraine variants, or cluster headaches. Since his incarceration, he
19   "has received a plethora of medications . . . to bring the headaches under control." As "one
20   of the causes of or results of the headaches," Shakur experiences sensitivity to light, and he
21   has been diagnosed by an ophthalmologist as suffering from photosensitivity. According to
22   the Amended Complaint, "the assigned unit and treating physician" recommended Shakur
23   be given transitional lenses. Shakur was notified that the "recommendation had been
24   denied."

25   Shakur wrote Harvey regarding the denial; Harvey did not respond to Shakur. Shakur
26   alleges it is Harvey's duty to address and respond to prisoner concerns and medical issues
27   where no resolution has been met with medical staff. Shakur then wrote to Burciaga,
28   Harvey's supervisor, who did not respond. The "Utilization Management Physician" then

1   responded that "transitional lenses were not medically necessary," however, and

2   recommended "an alternate plan of tinted lenses." Nevertheless, Corizon did not provide

3   Shakur the lenses, telling Shakur it is not contractually bound to provide sunglasses or

4   transitional lenses to inmates and that it was "not in the sunglass business."  As a result,

5   Plaintiff alleges, his condition is exacerbated.  Shakur has written Ryan, Harvey, and

6   Burciaga to follow through on the grievance resolution; they have each failed to answer

7   Shakur's concerns.  Shakur asserts Ryan, as the Director of ADOC, established policies and

8   it was his responsibility to ensure all policies and procedures, including the grievance policy

9   and contracted services, are followed.

10       In Count Two, Shakur asserts that he was diagnosed by ADOC doctors and an outside

11   specialist with "degenerative joint disease, hallux valgus and/or bunions, as well as plantar

12   fasciitis."  Shakur states he is in a constant state of pain and discomfort due to idiopathic

13   edema, has swelling of the lower extremities, his feet swell causing bruising and numbness,

14   and his ability to walk is at times affected.  In addition to medication, Shakur previously

15   relied on insoles, arch supports, heel cups, knee sleeves and medical shoes to treat the

16   resulting pain.  However, once the "for profit medical corporations took over," Shakur was

17   informed that he would no longer be provided with medical shoes, "as the criteria had

18   changed," and that he would have to "purchase his own or wear the deck shoes as provided

19   by ADOC." Shakur "informed Defendants that he was indigent and that the deck shoes . . .

20   had already been determined by medical to exacerbate Plaintiff's condition."  According to

21   the Amended Complaint, when an outside medical specialist later recommended medical

22   shoes, Corizon disregarded that recommendation as well.

23       Shakur alleges Harvey and Burciaga did not respond to Shakur's inmate letters in

24   violation of written policy and procedure.  In response to a grievance appeal, "it was stated

25   'our review showed that you have been issued the following special needs orders:  a). one

26   pair of elastic stockings 11/22/13; and b). lower bunk/tier bed, tennis (medical) shoes to be

27   worn at all times . . .' and 'our review showed that you have been provided appropriate

28   medical  supplies including tennis shoes for you medical needs[.]"  Shakur wrote to Harvey

1    and Burciaga to clarify that he did not have any medical shoes as the "last pair had worn out

2    and [Shakur] had not received any in quite sometime."  Shakur also wrote to Ryan, who did

3    not respond.

4          Shakur seeks a judgment against Defendants for violating his constitutional rights, an

5    order directing Defendants to have Plaintiff evaluated and treated by an independent agent

6    and to provide appropriate footwear and eyewear as recommended.  He is also seeking

7    punitive and compensatory damages and costs.

8    A.    *Counts One and Two as to Corizon*

9          As stated in the previous Order, the claim against Corizon will be allowed to proceed.

10   (Doc. 6) In both counts, Plaintiff alleges that Corizon refused to provide him with prescribed

11   treatment either because such treatment was "not in [its] contract" or the "criteria" to qualify

12   for such treatment "had been changed." Liberally construed these allegations are sufficient

13   to state a claim for relief against Corizon, and it will be required to submit a response to the

14   Complaint.

15   B.    *Count One --Burciaga and Harvey*

16         Shakur alleges that Burciaga and Harvey were deliberately indifferent when they

17   failed to follow established policies to respond to Shakur's grievance. This is not actionable

18   because (1) the actions do not meet the standard of deliberate indifference and (2) the

19   deviation from prison policies is not actionable under § 1983. Therefore, the claims against

20   Defendants Burciaga and Harvey in Count One will be dismissed.

21         First, Shakur alleges that Harvey and Burciaga, in their official capacity, acted with

22   deliberate indifference when they did not respond to Shakur's grievance regarding the need

23   for medically recommended eyewear.  Shakur has not stated a claim of deliberate

24   indifference because the Amended Complaint does not allege facts indicating Defendants'

25   responses were deliberately indifferent such that they constituted an unnecessary and wanton

26   infliction of pain. Not every claim by a prisoner relating to inadequate medical treatment

27   states a violation of the Eighth or Fourteenth Amendment. To state a §1983 medical claim,

28   a plaintiff must allege that the defendants acted with "deliberate indifference to serious

1    medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v.*

2    *Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by

3    demonstrating that failure to treat the condition could result in further significant injury or

4    the unnecessary and wanton infliction of pain and (2) the defendant's response was

5    deliberately indifferent. Jett, 429 F.3d at 1096 (quotations omitted).

6         "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

7    1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know

8    of an disregard an excessive risk to inmate health; " the official must both be aware of facts

9    from which the inference could be drawn that a substantial risk of harm exists, and he must

10   also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate

11   indifference in the medical context may be shown by a purposeful act or failure to respond

12   to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439

13   F.3d 1096. Deliberate indifference may also be shown when a prison official intentionally

14   denies, delays, or interferes with medical treatment or by the way prison doctors respond to

15   the prisoner's medical needs. *Estelle*, 429 U.S. at 104-105; *Jett*, 439 F.3d at 1096.

16        Deliberate indifference is a higher standard than negligence or lack of ordinary due

17   care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross

18   negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220

19   F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs*., 622 F.2d 458,

20   460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"

21   do not support a claim under § 1983). "A difference of opinion does not amount to deliberate

22   indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th

23   Cir. 1989). A mere delay in medical care without more, is sufficient to state a claim against

24   prison officials for deliberate indifference *See Shapley v. Nevada Bd. of State Prison*

25   *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action

26   must rise to the level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at

27   105.

28        Count One is dismissed against Harvey and Burciaga because Shakur's allegations that

- 6 -

Harvey and Burciaga failed to respond to Shakur's grievance does not meet the standard of deliberate indifference. In the Amended Complaint, Shakur alleges that Harvey and Burciaga never responded to Shakur's grievance. (Doc. 13 at 5.)  Harvey and Burciaga never overtly denied Shakur's grievance. Shakur also did not state any facts about his personal relationship with them, other than the communication with Defendants through the formal grievance process. Shakur cannot allege Harvey and Burciaga knew about his eye condition to sunlight because he did not speak to them in person, and they never acknowledged his written grievances; i.e., Shakur has not adequately alleged Harvey and Burciaga received and/or knew of the grievances which makes any allegation that they intentionally or deliberately failed to respond a conclusory allegation. Failure to respond to the grievance does not mean that prison officials intentionally denied, delayed or interfered with Shakur's medical treatment.  As explained in Clement, the conduct may have been negligent, a lower standard, but does not rise to the high standard of deliberate indifference. Thus, Shakur's claim regarding the failure to respond is not deliberate indifference and thus not actionable.

Shakur additionally alleges that the failure to follow policies was deliberate indifference. The failure to follow prison policies is not actionable under §1983. *See, e.g.*, *Cousins v Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). Thus, Shakur's allegations that Harvey and Burciaga may have deviated from their established policies does not adequately allege deliberate indifference.

C.    *Count One – Ryan*

Shakur's claim against Ryan will be dismissed in both his personal and official capacities.  Shakur's allegation that Ryan failed to answer and take action on a formal grievance his employees received does not rise to the level of deliberate indifference. It is unclear from the Amended Complaint whether Shakur intended to sue Ryan in a personal or official capacity. Suits under § 1983 may be brought against state officials in their personal or official capacities.  "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original).  Thus, "a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Liability under section 1983 arises only upon a showing of personal participation by the defendant. . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  An official-capacity suit, by contrast, requires that the entity itself be a "moving force" behind the deprivation-the entity's "policy or custom" must have played a part in the violation of federal law. *Graham*, 473 U.S. at 166.  A suit against a public official in his official capacity makes the public entity liable to the extent it has received notice and an opportunity to respond. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Lawsuits against an individual in their official capacity are suits against the office itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Id*.  However a plaintiff cannot maintain a lawsuit against a defendant in his official capacity for damages. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.")*; see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983.  Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Therefore, if adequately pled, Shakur may maintain a lawsuit against Ryan in his official capacity for prospective injunctive relief. *See Will*, 491 U.S. at 71, n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985);

1   *see also Flint v. Dennison*, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for prospective

2   injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment

3   immunity.").

4          Shakur has not adequately alleged that an ADOC policy or custom caused him to

5   suffer a constitutional injury, and thus Shakur's claim against Ryan in his official capacity

6   will be dismissed.  Shakur has alleged that Corizon's policy on transition lenses caused his

7   injury in Count One, but did not adequately allege how the ADOC policy and Ryan has

8   caused an injury. Shakur's Amended Complaint describes ADOC's policies and Ryan's

9   duties, but does not connect the policy and duty to the alleged injury. Additionally, any claim

10  against ADOC that is grounded in Corizon's policies would be duplicative. Liberally

11  construed, Shakur claims that Harvey and Borciaga's failure to respond to the grievance is

12  a policy for which Ryan is responsible for implementing or maintaining. First, failing to

13  follow prison policies is not a claim that is actionable under §1983. *See Cousins v. Lockyer*,

14  568 F.3d at 1070. Furthermore, isolated incidents do not establish a policy or custom.

15  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not

16  be predicated on isolated or sporadic incidents; it must be founded upon practices of

17  sufficient duration, frequency and consistency that the conduct has become a traditional

18  method of carrying out policy."); *accord Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107

19  (9th Cir. 1988) (two incidents insufficient to establish custom or practice).  There is no

20  evidence that ADOC or Ryan has a pattern of not responding to formal grievances beyond

21  the two instances alleged in the Amended Complaint. Furthermore, Shakur received a

22  response from the Utilization Manager, an employee of ADOC, explaining that the tinted

23  lenses were recommended but were not required. (Doc. 13 at 6).  Shakur had received notice

24  that this grievance and grievance appeal had been denied with a medical explanation. (Doc.

25  15, p. 22 of 37). Shakur did not receive a favorable response, but that is not actionable

26  against Ryan.  Lastly, Shakur has not requested specific injunctive relief from Ryan. Thus,

27  for all these reasons, the claim against Ryan will be dismissed in his official capacity.

28          Additionally, Shakur's claim will be dismissed regarding Ryan in his individual

1   capacity because Shakur has not met the high standard of deliberate indifference. To state

2   a §1983 medical claim, a plaintiff must show that the defendant acted with "deliberate

3   indifference to serious medical needs." *Jett*, 439 F. 3d at 1096. A plaintiff must show (1) a

4   "serious medical need" by demonstrating that failure to treat the condition could result in

5   further significant injury or the unnecessary and wanton infliction of pain and (2) the

6   defendant's response was deliberately indifferent.  *Jett*, 439 F.3d at 1096 (quotations

7   omitted).

8       As previously stated, "[d]eliberate indifference is a high legal standard." *Toguchi v.*

9   *Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison

10   official must both know of and disregard an excessive risk to inmate health; "the official must

11   both be aware of facts from which the inference could be drawn that a substantial risk of

12   serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

13   Deliberate indifference is a higher standard than negligence or lack of ordinary due care for

14   the prisoner's safety.  *Farmer*, 511 U.S. at 835.  Indeed, the indifference must be substantial.

15   The action must rise to a level of "unnecessary and wanton infliction of pain."  *Estelle*, 429

16   U.S. at 105.

17       Shakur's claim that Ryan created a policy or custom which encouraged staff to not

18   resolve grievances is unsupported and does not meet the level of deliberate indifference. In

19   his  Amended Complaint, Shakur explains that Harvey and Borciaga failed to respond to

20   Shakur's grievance, but do not include additional instances or other evidence suggesting that

21   failing to respond to the formal grievance process is a result of an instruction given by Ryan.

22   There is no allegation that Ryan deliberately instructed Harvey and Borciaga to not respond

23   to the grievance process.  Contrary to this claim, Shakur received a response to his grievance

24   by the Utilization Manager. (Doc. 15, p. 22 of 37). The Utilization Manager explained in his

25   Medical Grievance Appeal response that after investigation, eye tests were normal. Id. While

26   transition lenses may be recommended, they are not medically necessary. *Id*.  Ryan followed

27   the medical physician's recommendations of what was medically necessary. *Id*.  Ryan had

28   confirmed via pharmacy records that migraine medication was refilled and allowed Shakur

1  to wear specialty glasses. Id. Shakur has not adequately alleged that Ryan met the level of

2  deliberate indifference because Ryan addressed all the medically necessary health issues

3  according to the Medical Grievance Appeal. *Id.*

4        Because there was no serious medical need for the glasses, Shakur has not sufficiently

5  alleged that Ryan was deliberately indifferent. A difference of opinion does not constitute

6  deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In the medical

7  context, Shakur is required to show a serious medical need. *Jett*, 429 F.3d at 1096.

8  According to both the optometrist that examined Shakur and the Utilization Management

9  Physician, the transition lenses were recommended, but not medically necessary. (Doc. 13

10  at 5.) Thus, because the glasses were considered to be not medically necessary, there was

11  likely no serious medical need for the glasses. Even if the physician was incorrect, and there

12  was a serious medical need, Ryan would have to have knowledge about the serious medical

13  need. If he relied on the Utilization Management Physician, he likely did not have knowledge

14  that there was a serious medical need. Therefore, deliberate indifference is not adequately

15  alleged because there was no apparent serious medical need and if there was, Shakur has not

16  adequately alleged it. *Jett v. Penner*, 439 F.3d at 1096.

17  C.    *Count Two – Burciaga and Harvey*

18        The actions alleged as to Harvey and Burciaga in Count Two do not rise to a level of

19  deliberate indifference. Shakur has not alleged any personal interaction with either Harvey

20  and Burciaga such that indicates either received the grievance or whether they did not

21  respond to the grievance intentionally. Shakur's allegations at most stated Harvey and

22  Burciaga may have been indifferent or negligent, but this does not rise to the level of

23  deliberate indifference. Shakur has not stated supporting facts that show that they knew about

24  Shakur's condition, and intentionally denied the opportunity to help him. Furthermore, even

25  if Shakur alleged Harvey and/or Burciaga had answered his grievance, Shakur has not

26  alleged anything more than negligence or indifference. Thus, Shakur's claim in Count Two

27  as to Harvey and Burciaga will be dismissed.

28

1  E.      *Count Two – Ryan*

2         Shakur's claim against Ryan will be dismissed in Count Two in both his individual

3  and official capacities.  Shakur has not adequately alleged that an ADOC policy or custom

4  caused him to suffer constitutional injury. Shakur alleged that Corizon has altered its position

5  on medical shoes, so that Shakur is no longer receiving the appropriate shoes. Corizon is the

6  correct defendant because Corizon's policy is at issue. Shakur claims that failure to abide by

7  ADOC's written policy and prison procedure is deliberate indifference. As explained herein

8  in the Count One analysis, failure to conform to policies is not an act of deliberate

9  indifference. *Cousins v Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). Therefore, because

10  Shakur has not alleged how an ADOC policy or custom caused him to suffer a constitutional

11  injury, this claim against Ryan in his official capacity will be dismissed.

12         The claim against Ryan in his personal capacity will be dismissed because Shakur

13  does not make any factual allegations as to Ryan having knowledge of Shakur's medical

14  condition. In the Amended Complaint, Shakur alleged Ryan wrote to Shakur explaining that

15  Shakur should have access to medical shoes. (Doc. 13 at 11). Shakur states Ryan did not

16  realize the shoes were worn out and that Shakur needed more shoes.  *Id.*  Shakur wrote a

17  grievance to Harvey and Burciaga about Ryan's confusion.  *Id*.  However, after this one

18  response from Ryan, Ryan did not respond again to Shakur.  *Id*.  Because Shakur has not

19  alleged any other contact with Ryan (e.g., personal interactions), and does not allege a

20  subsequent response from Ryan, Shakur has not alleged sufficient facts that Ryan knew

21  Shakur did not have adequate footwear after Ryan issued his response to the grievance

22  appeal.  Further, Ryan may not have had the subsequent grievance brought to his attention

23  because they were written to Harvey and Burciaga and not to Ryan himself.  Therefore, while

24  this claim may be an act of negligence or indifference, deliberate indifference has not been

25  adequately alleged. This claim will be dismissed.

26

27

28

IV.   *Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Doc. 15); Plaintiff's Motion for an Emergency Preliminary Injunction and Temporary Restraining Order* (Doc. 24)

Shakur requests that Corizon arrange for Shakur to be immediately evaluated by an independent qualified orthopedic specialist, vascular and leg specialist, as well as an optometrist to determine the condition of Shakur's legs, feet, and eyes.  Shakur additionally asks the Court to order physicians to perform surgery to restore and maintain Shakur's ability to walk without pain.[1]

Injunctive relief is an equitable remedy.  "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982).  Injunctive relief is not automatic:  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Although particular regard should be given to the public interest . . . a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."  *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 1402 (1987).  The standard for issuing a TRO is the same as that for issuing a preliminary injunction.  *See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F.Supp.2d 1152, 1154 (D.Haw. 2007).

To obtain injunctive relief, a Plaintiff must show either "(a) probable success on the merits combined with the possibility of irreparable injury or (b) that [it] has raised serious questions going to the merits, and that the balance of hardships tips sharply in [its] favor."  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.2003).  The Ninth Circuit has explained that "these two alternatives represent 'extremes of a single continuum,' rather than two separate tests.  Thus, the greater the relative hardship to the moving party, the less

---

[1]However, in Plaintiff's Response to Corizon's objection to Plaintiff's Motion for TRO/Preliminary Injunction, Shakur has conceded he is currently receiving treatment for his feet conditions and does not need injunctive relief regarding his feet and legs. (Doc. 23 at 2; Doc. 26 at 3).

probability of success must be shown." *Immigrant Assistant Project of Los Angeles County Fed'n of Labor (AFLCIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002) (citation omitted). Because a preliminary injunction is an extraordinary remedy, the moving party must carry its burden of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 117 S.Ct. 1865 (1997); *City of Angoon v. Marsh*, 749 F.2d 1413 (9th Cir. 1984).  Therefore, Shakur must prove with a clear showing that there is either a probable success on the merits combined with the possibility of irreparable injury or that it has raised serious questions going to the merits and that the balance of hardships tips sharply in its favor.

The motion requesting injunctive relief will be denied because Shakur has not met his burden of persuasion by a clear showing that there will be a probability of success on the merits or that the balance of hardships tips sharply in Shakur's favor. While, liberally construed, Shakur's claims against Corizon are allowed to proceed, Shakur has not shown that it is likely he will prove that Corizon was deliberately indifferent. A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett*, 429 F.3d at 1096 (quotations omitted).

In his motion, Shakur included two Medical Grievance Appeals from the Director of Prisons, which explain the denial for specialty lenses and footwear. (Doc. 15-2 at 21, 22). In the Medical Grievance Appeal, the Director explains to Shakur that the doctor believed that lenses were not medically necessary but medically recommended by the Corizon Physician (Doc. 15-2 at 22) and that physicians treated Plaintiff with medication for his foot problems and prescribed treatment with items like shoes and ace bandages.  *Id*.  Even if Corizon did alter their policy for medical shoes, there is no evidence they acted deliberately to inflict pain. They provided multiple visits to the doctor. There is no evidence to suggest the doctors were intentionally denying medical treatment. Furthermore, in the Grievance Appeals responses, the medical records summary given suggests that Corizon acted reasonably, providing appropriate health care to Shakur. (Doc. 21, Modrzejewski Decl.  29,

32, 34).  Corizon's response to the motion provides records where Shakur is currently treated for conditions Shakur alleged are untreated.  *Id*.  Corizon's records show that Shakur has received adequate medical care when requested.  *Id*.  Shakur's allegations do not indicate there is evidence of intentional wrongdoing by the health care provider.  Shakur is has not demonstrated that the Corizon's actions were intentional and deliberately indifferent.  Because the second element is missing at this stage, there is no clear showing that the case is likely to succeed.  Thus, the motion as to specialty lenses and footwear will be denied because Shakur did not clearly show a probability of success on the merits or that the balance of hardships weighs in his favor.

Shakur's request for surgery will be denied because there is not a clear showing that the balance of hardships tips in Shakur's favor.  Further, a likelihood of success as to this claim has not been shown because it does not appear that there is sufficient evidence that the surgeries are medically necessary.  Additionally, Shakur has now conceded that no injunctive relief for Count Two as to his feet conditions is necessary.  Prison doctors can refuse to perform elective surgeries because they are not medically necessary.  *Saleem v. Atiyeh*, 855 F.2d 862 (9th Cir. 1988).  The prison doctors recommended specialty lenses and medical shoes but do not require them. (Doc. 15-2).  There is no evidence the prison doctors prescribed surgery that was medically necessary.  *Id*.

Lastly, Shakur also requests treatment for his eye problems in his motion (Doc. 24 at 2).  This additional request will be denied because there is no clear showing that the balance of hardships weigh in Shakur's favor.  Further, while the eye treatment may be medically recommended, there is not a clear showing that this claim is likely to succeed.

Shakur's requests for injunctive relief will be denied.

V.   *Plaintiff's Motion for the Appointment of Counsel* (Doc. 19)

The Court will deny Shakur's Motion for the Appointment of Counsel. The Court may request an attorney to represent a person proceeding in forma pauperis who is unable to employ counsel.  28 U.S.C. § 1915(d).  The Court does not have the power to make a

1   mandatory appointment of counsel, but the Court may request assistance from volunteer

2   counsel.  *Id*.; *United States v. 30.64 Acres of Land*, 795 F.2d 796 (9th Cir. 1986).  The Court

3   finds the Application to Proceed In Forma Pauperis previously filed in this case supports a

4   finding that Shakur does not have the resources to hire an attorney.

5          In determining whether to request the assistance of an attorney, the Court  considers

6   the "likelihood of success on the merits and the ability of the [plaintiff] to articulate [his]

7   claims pro se in light of the complexity of the legal issues involved."  *Richards v. Harper*,

8   864 F.2d 85, 87 (9th Cir. 1988) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir.

9   1983)); *see also Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (court may ask

10  counsel to represent indigent litigant under § 1915 only in "exceptional circumstances").

11  Shakur has not provided any further information to conclude that there is a likelihood of

12  success.  Rather, at this point, the pleadings/documents before the Court simply indicate there

13  is a dispute between the parties.  Further, Shakur's assertion that he has limited access to legal

14  materials and does not have the assistance of counsel does not indicate Shakur is unable to

15  articulate his claims in light of the complexity of the claims.  Rather, Shakur has been able

16  to articulate his claims and requests adequately.

17         Indeed, the Court finds that Shakur's difficulty in presenting his claims pro se is not

18  based on the complexity of the legal issues involved but rather on the general difficulty of

19  litigating pro se.  *See generally Wilborn v. Escalderon*, 789 F.2d 1328 (9th Cir. 1986).

20  Furthermore, Shakur has done a credible job in presenting motions and filing supporting

21  papers on behalf of his case.  *Jackson v. Dallas Police Dept.*, 811 F.2d 260 (5th Cir. 1986).

22  Shakur has successfully written a complaint pro se and has correctly served the Defendant.

23  The Court declines to seek volunteer counsel at this time.

24         However, the Court notes that the record indicates a jury trial has been requested in

25  this matter; a presentation to a jury may require greater skill than Shakur has or can develop.

26  The Court will deny the Motion for Appointment of Counsel with leave to resubmit.  *See*

27  *e.g., Reynolds v. Foree*, 771 F.2d 1179 (8th Cir. 1985); *Childs v. Duckworth*, 705 F.2d 915,

28  922 (7th Cir. 1983).  In the event this matter is scheduled for trial, Shakur may resubmit his

- 16 -

request.

Accordingly, IT IS ORDERED:

(1)    Defendants Ryan, Harvey, Borciaga are dismissed. Shakur's claims against Defendant Corizon Health Care will be allowed to proceed.

(2)    Shakur's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 15) is denied.

(3)    Shakur's Motion for an Emergency Preliminary Injunction and Temporary Restraining Order (Doc. 24) is denied.

(4)    Shakur's Motion for the Appointment Counsel (Doc. 19) is denied at this time. However, in the event this matter is scheduled for trial, Plaintiff may resubmit his request.

(5)    Shakur's Motion for Ruling is granted (Doc. 20) to the extent the Court has addressed the pending issues in this case.

DATED this 25th day of August, 2015.


_____
Cindy K. Jorgenson
United States District Judge